In re Lyndell HEWETT, whi Melvin C. Hewett and the marital community composed thereof, dba Mel Hewett Painting and General Construction, Debtor.

Bankruptcy No. 82–03411–Y11.

United States Bankruptcy Court, W.D. Washington, at Seattle.

Aug. 25, 1983.

Richard C. Kimberly, Beaty & Kimberly, P.S., Bellingham, Wash., Trustee.

Larry Daugert, Bellingham, Wash., for Creditors Committee.

Philip Brandt, Bellingham, Wash., for Rainier Bank.

John D. Pappas, Bellingham, Wash., for debtor.

## OPINION ON ORDER TO SHOW CAUSE

SAMUEL J. STEINER, Bankruptcy Judge.

This Chapter 11 case was filed on November 12, 1982. Since then innumerable controverted hearings have taken place. In sifting through the dust and smoke, the record shows the following history:

On November 18, 1982, the Court entered its routine order requiring the debtor to file monthly financial data including a balance sheet, a profit-and-lost statement, a certification as to tax payments and deposits, a statement as to debts of the debtor-in-possession unpaid for thirty days, and a statement as to salaries paid.

On December 3, 1982, an order was entered directing the debtor to show cause as to why the case should not be dismissed for her failure to file schedules. The schedules were filed on December 15, 1982, and the show cause proceeding was stricken.

On April 22, 1983, the Court issued an order directing the debtor to show cause as to why the case should not be dismissed or converted for her failure to file the monthly financial reports pursuant to the November 18, 1982 order and Local Rule 4005.

On April 28, 1983, the Creditors' Committee requested the appointment of a trustee, alleging *inter alia* that the debtor had failed to schedule a number of creditors including the Rainier National Bank which held a security interest in the debtor's home. The Committee also cited a possible fraudulent conveyance as a result of a transfer of real estate shortly before filing; the debtor's failure to schedule the value of stock held in the Lyndell Corporation; and the debtor's conduct in obtaining secured credit after filing without notice and hearing. Specifically, the facts revealed that the debtor did not schedule the Bank, and after filing and out of the ordinary course of business borrowed funds from the Bank and gave it security without notice and hearing. The facts also showed that two days before filing, the debtor formed the Lyndell Corporation with the debtor's attorney being the sole incorporator; and that a parcel of realty of substantial value was then transferred to the corporation. The details of the transfer, the values involved, and the interests in the land and stock have never been clarified. In view of such facts, the Court appointed an examiner on May 25, 1983.

On June 9, 1983, the Committee applied for conversion. Again, the Committee alleged as grounds the post-filing transactions and the debtor's failure to file finan-

cial reports. The Committee also contended that the debtor had scorned the Chapter 11 requirements and process.

On June 20, 1983, the attorney for the debtor applied for permission to withdraw. On June 22, 1983, a trustee was appointed. Counsel for the debtor was authorized to withdraw on July 7, 1983. The record also establishes that the present attorney for the debtor, despite two precautionary statements by the Court, has never been retained as required by Section 327 of the Bankruptcy Code, and that he has an interest of some nature in the Lyndell Corporation or its property. The exact nature of the interest has never been revealed.

On July 13, 1983, an order was entered which provided in effect that if the financial reports required by the Court's order of November 18, 1982, were not filed by August 1, 1983, the case would be converted without further order of the Court. Reports covering the period from the date of filing through June of 1983, were filed on August 9, 1983.

The Creditors' Committee now contends that the financial reports that have been filed do not comply with Local Rule 4005 or the Court's order because they lack balance sheets, are incomplete and are incomprehensible. Accordingly, the Committee seeks to have the case converted pursuant to the Court's order of July 13th.

The reports were not prepared by an accountant, are difficult to follow and contain information as to four distinct activities, to wit, Hewett Construction, Lyndell Corporation, Misty Meadows Stables and the Hewetts personally. The reports as to each activity will be discussed individually as follows:

First, as to Hewett Construction, the data refers to funds received from a "line of credit" without detail as to whom the line is with or what is involved. The reports do not include a balance sheet. Generally there is no information as to taxes and post-filing debts. The information is misleading if not incomprehensible. The reports show a total income of $145,767.75 and total expenses of $108,509.80, leaving a net income of $37,257.95. If, however, the inter-company transfers, the personal line of credit transfers and the check book adjustments are subtracted out, Hewett Construction sustained a net loss for the period of $13,000.

Second, as to the Lyndell Corporation, the statements make little sense. Taking the figures at face value, it is clear that for the eight-month period the corporation sustained a net loss of over $7,500. If the loans that were included as income are backed out, the corporation sustained a net loss of approximately $65,000. In addition, no balance sheets were submitted. Six of the eight statements do not rise to the level of a profit-and-loss statement. Further, the statements make no mention of taxes. Approximately $4,600 in wages were paid out so presumably there would be minimal FICA and Withholding taxes.

Third, as to Misty Meadows, again balance sheets have not been submitted. None of the profit-and-loss statements include any information about taxes (except for June), yet outside labor expenses were incurred, as were wages. The figures at face value show a loss of over $17,000.

Fourth, the data as to the Hewetts reflects basically the same shortcomings described above.

In summary, the Court agrees with the Committee. The financial information is incomplete and largely incomprehensible. The Court also agrees that the debtor has scorned the requirements of the Bankruptcy Code and Rules.

The debtor places much of the blame on the activity or lack thereof on her original attorney. What counsel may or may not have done is not now before the Court. Suffice it to say, the ultimate responsibility for complying with the Bankruptcy Code, the Bankruptcy Rules and the orders of the Court is on the debtor. The debtor and her present counsel have been aware of the problems in this case for months. Yet she has done nothing to amend the deficiencies in the schedules, to bring order out of the chaos, and has used cash collateral in total

disregard of Section 363(c)(2) of the Code. Moreover, the financial data provided to the Court and creditors is woefully deficient.

The only factor that has prevented this Court from converting this matter until now has been the perpetual promise of a plan that would pay all creditors in full. Evidently the money to fund such a plan would come from the debtor's attorney. Notwithstanding the desirability of creditors receiving one hundred cents on the dollar, the plan as orally proposed completely ignores secured and priority creditors and, hence, is not feasible.

This Court is of the opinion that in most Chapter 11 cases some degree of patience must be shown in order to give the debtor the opportunity to reorganize. However, there is a point beyond which the Court and creditors cannot tolerate delay and the flaunting of the Code and Rules. This case has gone far beyond that point. In fact, the proposed plan and the entire history of this case provide a glaring example of how a Chapter 11 case should not be conducted.

This case will be converted to a proceeding under Chapter 7 of the Bankruptcy Code because of the debtor's failure to furnish the financial data required by Local Rule 4005 and by its Order of November 18, 1983.